Steven G. Polard, Bar No. 90319
SPolard@perkinscoie.com
Jeffrey S. Goodfried, Bar No. 253804
JGoodfried@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Secured Creditor G5 Global Partners IX, LLC, a Delaware limited liability company

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>2151 HOTEL CIRCLE SOUTH LLC,<br><br>Debtor. | CASE NO.: 10-07330-LA11<br><br>Chapter: 11<br><br>**G5 GLOBAL PARTNERS IX'S OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF ASSETS TO MACINO ENTERTAINMENT HOLLYWOOD CORPORATION**<br><br>Date:    May 27, 2010<br>Time:    11:00 a.m.<br>Ctrm:    118<br><br>Before the Hon. Louise DeCarl Adler |

73620-0001/LEGAL18351254.1

OPPOSITION TO THE DEBTOR'S MOTION
FOR ORDER AUTHORIZING SALE OF
ASSETS TO MACINO CORPORATION

## TO THE HONORABLE LOUISE DECARL ADLER, UNITED STATES BANKRUPTCY JUDGE:

Secured Creditor G5 Global Partners IX, LLC, a Delaware limited liability company ("G5"), hereby submits its opposition (the "Opposition") to the motion (the "Motion") filed by the debtor 2151 Hotel Circle South, LLC (the "Debtor") for authorizing sale of assets to Macino Entertainment Hollywood Corporation ("Macino Corporation")[1].

### I.   INTRODUCTION

As the Court is well aware, since January 2010, the Debtor has filed not one, ***but three*** Chapter 11 Bankruptcy petitions. The Court dismissed the first bankruptcy petition (the "First Bankruptcy") as a sanction for, among other things, unauthorized use of cash collateral (estimates run to $800,000). The Court dismissed the second bankruptcy petition (the "Second Bankruptcy") for cause under 11 U.S.C. § 1112(b) and was told by the Court ***not to re-file in San Diego unless there is an agreement with the secured creditor regarding the cash collateral before filing***. (See earlier filed Transcript of Hearing at page 18). Despite no such agreement in place, the Debtor nonetheless re-filed a third bankruptcy petition (the "Third Bankruptcy") in this Court.

Essentially the only difference between the first two bankruptcies and the Third Bankruptcy is the Debtor now claims Macino Corporation has offered to purchase the Property for $14,000,000 (based on a ridiculously low cap rate of 4), and even though the last appraisal of the property put the value at $7,000,000.00. As discussed below, G5 objects to the Motion authorizing the sale to Macino on two grounds. First, this case should be immediately dismissed for cause since the Debtor violated (and misrepresented to this Court) the Court's transcribed direction. Second, the offer to purchase the Property (as defined in the Motion) is suspect, unlawful, and it remains overwhelmingly doubtful it will close.

---

[1] Which does not even exist and which has yet to make an appearance. Macino's appearance is being noticed as a party (buyer) at the contested matter and subpoened.

Meanwhile, the Debtor failed to provide declarations evidencing backup offers to purchase the Property. At the last hearing on May 13, 2010, the Court said the failure for the Debtor to file either of the two declarations due on May 17, 2010 would lead to dismissal (and after the hearing mistakenly put "neither").

In any event, the Debtor and buyer have failed to provide evidence that the Macino Corporation and its offer is anything more than a fraud upon this Court.

## II. DISCUSSION

### A. Rather Than Allow the Sale, the Court Should Dismiss the Bankruptcy Case Pursuant to Sections 109(g) and 1112(b).

Section 109(g)(1) of the Bankruptcy Code precludes a debtor from re-filing a petition if the debtor has had a case pending under the Code within 180 days of filing the latter petition and the earlier petition was dismissed for a willful failure to abide by court orders. *In re Smith*, 851 F.2d 747, 748 (5th Cir. 1988).[2] In this case the First Bankruptcy was dismissed on March 15, 2010 as a sanction "[b]ased on the debtor's unauthorized use of cash collateral, failure to provide proof of workmen's compensation insurance, and the absence of a reasonable likelihood of rehabilitation." *See* Decaration of Steven G. Polard filed with G5's Emergency Motion for Dismissal [Docket Entry No. 14], Exh. A. The 180 day prohibited period, therefore, would end in August 2010.

Also discussed more extensively in G5's Emergency Motion to Dismiss, and incorporated herein by this reference, Section 1112(b)(4)(E) provides that a Bankruptcy Court should dismiss a petition for failure to comply with an order from the Court. In the second case, the Central District Court already found cause for dismissal under §1112(b)(4), which stands at res judicata and collateral estoppel. In this case, the Debtor

---

[2] Although Section 109(g) refers to "individual or family farmer," Bankruptcy Courts have prohibited the re-filings of bankruptcy petitions by all types of debtors. *See, e.g., In re Somerset Capital Corp.*, 264 B.R. 788, 790 (Bankr. D. Mass. 2001) (Debtor was a corporation); *In re NuGelt, Inc.*, 142 B.R. 661, 667 (Bankr. D. Del. 1992) (Debtor was a corporation). Although the Debtor has cited other non-binding authority, the broad interpretation by the *Somerset* and *NuGelt* courts of Section 109(g) makes the most sense here because otherwise a dismissal sanction would have no adverse effect since a non-individual debtor would be allowed to simply re-file its petition each time it was dismissed. In fact, re-filing a petition after a dismissal sanction would actually benefit the sanctioned party since it would resurrect an automatic stay. Because of this non-logical result, it is no wonder that these courts have included non-individuals within the scope of Section 109(g).

73620-0001/LEGAL18351254.1    -3-    OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF ASSETS TO MACINO CORPORATION

willfully violated the Honorable Maureen Tighe's directiver on April 14, 2010 to not re-file another bankruptcy, even in San Diego, unless the Debtor and secured creditor agree to the use of cash collateral before filing. *See* Supplemental Declaration of Jeffrey Goodfried filed concurrently with G5's Opposition to Use of Cash Collateral [Docket Entry No. 29], Exh. A (April 14, 2010 Transcript, 18:3-8). The Debtor even twisted and misrepresented the Court's directive to this Court. <u>See</u> Debtor's Opposition to G5's Emergency Motion to Dismiss [Docket Entry No. 31], 2:20 to 5:26.

### B. The Purported Agreement by Macino Corporation to Purchase the Property Is Suspect, Unlawful and Overwhelmingly Doubtful It Will Close.

The Debtor contends that Macino Corporation is ready, able and willing to purchase the Property for $14,000,000.[3] The only evidence by the Debtor is a purchase agreement (the "Agreement") claiming Macino Corporation has offered to buy the Property for said amount, and the Declaration of Myke Macino of the Macino Corporation ("Macino Decl." or "Macino Declaration").

The Agreement is unenforceable and voidable on its face. There simply cannot be an offer from "Macino Entertainment Hollywood Corporation" to the Debtor *because no such corporation exists*. Macino Corporation concedes as much in the Agreement. A close look at Paragraph 1(A) of the Agreement shows that this is *not* a corporation, individual, partnership, LLC or LLP -- but rather an "Other." The Agreement then leaves a space blank where Macino Corporation was to describe its business structure. Further, a search on the California Secretary of State website for Macino Corporation indicates there is no such corporation. Supp. Goodfried Decl., ¶ 3.

Only a properly organized corporation may adopt a name that includes the words "Corporation," "Corp.," "Incorporated," or "Inc." Cal. Bus. & Prof. Code § 17910.5(a). Since Macino Corporation uses *corporation* in its name, and since such use is illegal under California law, this Agreement is unenforceable and void.

---

[3] The most recent Property Appraisal valued the Property as of February 2, 2010 at $7,000,000. *See* Request for Judicial Notice filed concurrently with G5's Emergency Motion to Dismiss, Exh. B [Docket Entry No. 17 (Bradley Decl., ¶ 3)]. This marks a substantial drop from a 2009 Appraisal by the same appraiser finding a value of $8,000,000 as of May 13, 2009. *Id.*

1  Besides using an illegal fictitious name, the purported buyer is prohibited from
2  registering the fictitious business name. County clerks are prohibited from accepting for
3  filing a fictitious business name that includes the word "corporation" where the entity is in
4  fact not a corporation. Cal. Bus. & Prof. Code § 17910.5(c).

5  Since Macino Corporation cannot register its fictitious name, it cannot enter into
6  this contract to purchase the California hotel property. Indeed every person[4] who
7  regularly transacts business in California for profit under a fictitious business name[5] must
8  file and maintain a current fictitious business name statement. Cal. Bus. & Prof. Code §
9  17910. The purpose of the requirement is to make a public record of the individual
10 persons for the benefit of those who deal with them. *Hixson v. Boren*, 144 Cal. App. 2d
11 547, 533 (1956). Accordingly, it is impossible for Macino Corporation to transact
12 business in California, and to enter into the Agreement.

### C.   Mr. Macino Has Not Established He Does Not Have a Suspect Past

14 Further, Mr. Macino has a suspect past and so far has not chosen to even appear in
15 this Court. Indeed, a 2004 article in the British periodical *The Stage* accused Myke
16 Macino of engaging in a scam where he guaranteed aspiring actors and models
17 representation and promotion in exchange for a registration fee. *See* concurrently filed
18 Request for Judicial Notice ("RJN"), Exhibit A. The article alleges that Macino claimed
19 he had connections to certain producers and agents, when in reality, he had no such
20 relationships. *Id.*

21 Moreover, there are questions about Mr. Macino's British passport expiring – so
22 how did he travel to here to the U.S.? Further, Mr. Macino might be using another
23 person's name on another passport. Further, that he is wanted for questioning by the
24 police in Britain. Further, that his 90 day Visa to the U.S. expired long ago.

25 In addition, Macino and his "corporation" provide no evidence that they can close
26 the transaction.

---

27 [4] "Person" includes individuals, limited liability companies, partnerships and other associations, and corporations. Cal. Bus. & Prof. Code § 17902.
28 [5] A name is fictitious if it suggests the existence of additional owners. Bus. & Prof. Code § 17900(b)(1).

73620-0001/LEGAL18351254.1  -5-  OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF ASSETS TO MACINO CORPORATION

**D.    The Declarations Actually Filed May 17 Do Not Provide Any Admissible Evidence That the Proposed Buyer Can Perform**

The Court generously gave the Debtor and the proposed buyers an opportunity to demonstrate that these so called purchasers were for real and could perform. *The Debtor totally failed in obtaining ANY declaration at all from the supposed backup buyer.* The declaration of Mr. Macino on behalf of his nonexistent company fails to demonstrate that this is more than a fraud upon the Court.

First, Mr. Macino, and the Debtor by preparing the declaration, continue to misrepresent to the Court that Macino Corporation is a corporation. It is not. Remarkably, they don't make any attempt to address its status here.

Second, the conclusionary language that Macino Corporation is "willing and able" to complete the purchase is not evidence of anything. There is no attempt made to demonstrate that it has any assets, any cash flow, any equity or debt or financing to complete the contract, and certainly none to indicate it can do it by June 11, 2010. Mr. Macino himself is a British citizen who does not bother to explain how he legally would bring any funds in from abroad. He offers no explanation as how he conducts business here with an expired 90 day visa. He offers no explanation as to how he is here with an expired British passport. He offers no foundation for the ability to close.

Most telling is that the contract for sale attached to Mr. Macino's Declaration at page 2 of 10, paragraph M, which says, "No loan is needed to purchase the Property. Buyer shall within 14 Days After Acceptance (acceptance was April 30, so 14 days was May 13, 2010) provide Seller written verification of sufficient funds to close this transaction." Obviously the verification never came timely--this point was raised at the hearing on May 13 and no offer of proof was made by Debtor at the hearing to demonstrate that the verification had been received. The next opportunity to provide such verification would have been the declaration. But the declaration is silent as to verification of funding. In addition, verification usually means a writing from a bank or lender which

confirms that the buyer has the funds in his/her account. So the buyer is already in material breach.

Remarkably, this is all wholly inconsistent with the broker declaration in support of the Debtor's Motion, which provides that Macino Entertainment plans to pay for the Property through a loan commitment backed by a $50 million stand-by letter of credit issued by HSBC, London. The Debtor's inconsistent accounts on how it plans to pay for the hotel proves that even the buyer does not know how it will close this deal.

Meanwhile the value of the property is declining as the secured creditor here cannot foreclose. The stalling must end.

### E. Debtor's Repeated Bankruptcy Filings and Misrepresentations to the Court Calls for Rule 9011 Sanctions.

Rule 9011(a) of the Federal Rules of Bankruptcy Procedure ("Rule 9011") provides in relevant part that

> [t]he signature of . . . a party constitutes a certificate that the . . . party has read the document; that to the best of the . . . party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; *and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case* . . . . If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party . . . the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorneys' fee.

Fed. R. Bankr. Proc. Rule 9011(a). This rule is substantively the same as Rule 11 of the Federal Rules of Civil Procedure. It is well settled that the purpose of Rule 11 is to deter baseless filings and streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1991).

Repeated filings aimed solely at frustrating foreclosure through invocation of the automatic stay constitutes bad faith and an abuse of the bankruptcy process sanctionable

1  under Rule 9011(a). *In re Frenz*, 142 B.R. 611, 614 (Bankr. D. Conn. 1992); *Peia*, 145
2  B.R. at 752.

3        In this case, the Debtor's repeated filing of bankruptcy petitions constitutes a
4  pattern of filing for an improper purpose, especially when the counsel for the Debtor
5  knows that it must obtain a stipulation from the secured lender before re-filing its petition.

6        In addition, Mr. Wald has misrepresented Judge Tighe's directive saying no new
7  case should be filed in San Diego absent a pre-petition agreement with the lender. Mr.
8  Wald has also falsely claimed in pages 1 and 2 of his Cash Collateral Motion that the
9  receiver is managing the Debtor's business so no cash collateral was being used.

10       G5 therefore requests the Debtor and its counsel be sanctioned. Upon the Court's
11 request, G5 will submit a declaration providing the attorneys' fees incurred in this third
12 bankruptcy case.

### III. CONCLUSION

14       For the reasons stated above, this Court is requested to dismiss this Third
15 Bankruptcy. Alternatively, the Court is requested to deny the Debtor's Motion for
16 authorization to sell the Property.

18 DATED:    May 20, 2010.    **PERKINS COIE LLP**

19                           _____
20                           Steven G. Polard,
21                           Attorneys for creditor G5 Global Partners IX, LLC, a
                              Delaware limited liability company